UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HENRY L. GRAFTON,<br><br>    Plaintiff,<br><br>v.<br><br>EMI PRODUCTS, LLC, FALLON EGAN, and ELECTRO-MECHANICAL INDUSTRIES, INC.,<br><br>    Defendants. | Case No. 2:11-cv-00048-EJL-LMB<br><br>**REPORT AND RECOMMENDATION, AND ORDER** |

This is an employment action that was removed from the First Judicial District of the State of Idaho. This case has been referred by presiding District Judge Edward J. Lodge to the undersigned for all pretrial matters. (Dkt. 28). There are four motions currently pending: 1) Defendants' Motion to Dismiss or Transfer Venue (Dkt. 22); 2) Defendants' Motion to Submit Reply Affidavit (Dkt. 33); 3) Defendants' Motion for Protective Order (Dkt. 34); and 4) Plaintiff's Motion to Strike (Dkt. 37). The Court has reviewed the motions, the parties' briefing and arguments, as well as all of the referenced documents, and finds that oral argument will not further aid the decisional process. The

Court therefore enters the following Report and Recommendation that Defendant's Motion to Dismiss be denied.

## REPORT

Defendant Electro-Mechancial Industries, Inc. ("EMI") is a specialty item retailer marketing products nationwide to the oil, gas and telecommunications industries. Defendant Fallon Egan founded EMI in Houston, Texas in 1991. In 2004, based on the recommendation of a business associate, Egan made contact with Plaintiff Henry L. Grafton to fill a sales position. According to Defendants, they negotiated with Grafton over the telephone and through email before finally meeting in Seattle, Washington to form an employment relationship. The parties executed a formal employment contract in June 2004. According to Defendants, Grafton required that he be able to stay living in Idaho and conduct business for EMI remotely. Defendants accommodated Grafton's request, making him the only EMI employee to maintain an office outside of Houston, Texas.

From 2004 to 2010, Grafton was employed as a salesman by EMI. According to Grafton, the employment contract included a salary of approximately $75,000 plus commissions of 5% and a variety of benefits. In 2010, Grafton earned $120,000 in commissions on a single multi-year, multi-million dollar contract to fabricate and manufacture certain railroad products. According to Grafton, after making its initial payments in full, EMI began unilaterally reducing Grafton's railroad contract commissions. Shortly thereafter, on November 1, 2010, Grafton's employment was terminated.

For its part, EMI cites work ethic and performance issues as the reasons for Grafton's termination. EMI further states that "other than Grafton, [it] did not have any employees located in the State of Idaho at anytime … [and] other than Grafton, [it] has no contacts with the State of Idaho." *Memo in Support of Motion to Dismiss*, 4 (Dkt. 23). Accordingly, EMI argues that this Court lacks personal jurisdiction and that dismissal or transfer to another venue is required.

## DISCUSSION

1.  **Motion to Submit Reply Affidavit (Dkt. 33) & Motion to Strike (Dkt. 37).**

As an initial matter, Defendants seek leave of Court to submit a reply affidavit in support of their motion to dismiss. Defendants request is to "make an evidentiary record responsive to new issues raised by Plaintiff in his Opposition to Defendants' Motion." *Motion to Submit Reply*, 2 (Dkt. 33).

Plaintiff filed a motion to strike the affidavit (Dkt. 37) along with his response to the request. *Response* (Dkt. 40). Plaintiff generally opposes the proposed reply and affidavit because it seeks to introduce new evidence and is in violation of Local Rule 7.1.

Local Rule of Civil Procedure 7 .1(b)(2) requires that that a party file any supporting documentation with their respective motion. In other words, the local procedural rules do not allow parties to attach additional exhibits to replies in support of their motion. Accordingly, Defendants' Motion to Submit Reply Affidavit (Dkt. 33) will be denied and Plaintiff's Motion to Strike (Dkt. 37) will be granted.

2.  **Motion to Dismiss (Dkt. 22)**

   A.   **Personal Jurisdiction**

It is the plaintiff's burden to establish that this Court has personal jurisdiction over Defendants. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). To survive a jurisdictional challenge on a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction. *Id.* at 473. In determining whether Plaintiffs have established a prima facie case, a plaintiff's allegations of jurisdictional facts in the complaint are presumed true unless contradicted by opposing affidavits. *Alexander v. Circus Circus Enterprises, Inc.*, 939 F.2d 847, 850 (9th Cir. 1991) *overruled on other grounds*. When opposing affidavits are presented, plaintiff must come forth with evidence of jurisdiction. *Id.* at 850; *Davis v. American Family Mut. Ins. Co.,* 861 F.2d 1159 (9th Cir. 1988).

Further, an exercise of personal jurisdiction must comport with the state long-arm statue and with the constitutional requirement of due process. *Ziegler*, 64 F.3d at 473.

   i.   **Idaho's long-arm statute**

The assertion of personal jurisdiction must comply with the requirements of Idaho's long-arm statute and must not offend due process. *Decker Coal Company v. Commonwealth Edison Company*, 805 F.2d 834 (9th Cir. 1986). The Idaho long-arm statute, Idaho Code § 5-514,[1] provides that a person is subject to personal jurisdiction if

---

[1] Idaho Code § 5-514(a) & (b) provide that a non-resident is subject to the court's jurisdiction as to any cause of action arising from:

he or she transacts business or commits a tortious act in Idaho and the alleged cause of action arises from that transaction or act. *Lake v. Lake*, 817 F.2d 1416, 1420 (1986) (interpreting the Idaho long-arm statute).

The Idaho Legislature, in adopting that statute, intended to exercise all the jurisdiction available to the State of Idaho under the Due Process clause of the United States Constitution. *Id.* at 1420. Thus, the state and federal limits of the Idaho long arm statute are coextensive, *id.*, and the Court must decide whether the exercise of jurisdiction over the moving Defendants comports with constitutional principles of due process. *Id.*

### ii. Due Process Test

It is well established that when personal jurisdiction is asserted over a defendant, due process is satisfied if the defendant has certain minimum contacts with the state such that the maintenance of the action does not offend traditional notions of fair play and substantial justice. *Id.* at 1420.

There are two types of personal jurisdiction: general and specific. *Reebok, Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995). Therefore, personal jurisdiction may comply with due process in one of two ways. The first is "general" personal jurisdiction, where the defendant's contacts with the forum are so pervasive that requiring it to appear to defend any lawsuit in the forum state, whether or not those contacts are

---

(a) The transaction of any business within this state which is hereby defined as the doing of any action for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation;
(b) The commission of a tortious act within the state; ....

related to the cause of action, does not offend traditional notions of fair play and substantial justice. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (9th Cir. 1977) (quoting *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945)). To establish such jurisdiction, the plaintiff must show that the nonresident defendant's activities within a state are "substantial" or "continuous and systematic," even though the claim is unrelated to the defendant's activities. *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993) (citing *Data Disc*, 557 F.2d at 1287).

If the defendant has not had such pervasive contact with the forum state, as the case appears here, they may still be subject to "specific" or "limited" personal jurisdiction if the plaintiff's cause of action relates in a certain way to the defendant's contacts with the forum. In determining whether the court has this type of jurisdiction, the Ninth Circuit has established the following three-part test: (1) the defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable. *Rano*, 987 F.2d at 587 (citing *Pacific Atl. Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir. 1985)). *See also Roth v. Marquez*, 942 F.2d 617, 620-21 (9th Cir. 1991) (citations omitted).

### iii. Application

Plaintiff does not argue that Defendants are subject to general jurisdiction because there are no allegations that Defendants contacts with Idaho are systematic and

continuous. Rather, Grafton pleads that Defendant is the subject of specific jurisdiction.

Under specific jurisdiction, the Court must first look for "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Lake*, 817 F.2d at 1421. The purposeful availment requirement ensures that defendants will not be haled into a jurisdiction through random, fortuitous, or attenuated contacts. *Ziegler v. Indian River County*, 64 F.3d 470 (1995) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).

This case sounds primarily in contract. An out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident. *Burger King,* 471 U.S. at 478. In cases arising under contract, the Ninth Circuit Court of Appeals has held that personal jurisdiction is evaluated under "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine purposeful availment. Id. at 479.

On one hand, Defendants never entered Idaho during contract negotiations. The employment agreement was signed by Defendants in Texas. In fact, Defendants claim to have never physically entered Idaho until after the commencement of this lawsuit.

On the other hand, it was Defendants that reached out to Grafton in Idaho and even revised the sales position in order to allow him to stay in Idaho, as opposed to relocating to Texas, when they were negotiating the employment agreement. Defendants further contacted with Grafton to work from his home office for six and a half years in Hayden, Idaho. In fact, the terms of the agreement specified that Grafton stay in Idaho.

REPORT AND RECOMMENDATION AND ORDER - 7 -

REPORT AND RECOMMENDATION AND ORDER - 7 -

All of Grafton's claims relate to the work he did while under contract in Idaho. Finally, by its very terms, the agreement provides it "shall be governed by and construed in accordance with the substantive laws of Idaho." Exhibit C to Grafton Affidavit (Dkt. 28)

The parties negotiations, the terms of the agreement, and interactions between the parties during Grafton's employment contemplates future consequences in Idaho, indicating purposeful availment of Idaho laws. This is particularly true when the agreement's choice of law provision establishes that Idaho substantive law shall guide. As a result, Defendants purposefully availed itself to the privileges of doing business in the State of Idaho. *Chapman v. Krutonog*, 265 F.R.D. 645, 649-50 (D. Haw. 2009).

## B.  **Transfer of Venue**

Under 28 U.S.C. § 1404(a), a district court may transfer an action "[f]or the convenience of parties and witnesses, [and] in the interest of justice, ... to any other district or division where it might have been brought."[1] In considering a motion to transfer under § 1404(a), the Court weighs the following discretionary factors:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498—99 (9th Cir. 2000). Courts also consider as significant factors the presence of a forum selection clause and the public

---

[1] A transfer from an initially improper district is governed by § 1406. However, because jurisdiction has already been determined proper, § 1404 is controlling.

REPORT AND RECOMMENDATION AND ORDER **- 8 -**

policy of the forum state, if any. *Id*. at 499. The burden is on the moving party to establish that transfer is appropriate. *Costco Wholesale Corp. v. Liberty Mutual Life Ins. Co.*, 472 F.Supp.2d 1183, 1189 (S.D.Cal. 2007). The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

There is no dispute that this lawsuit could have been filed in United States District Court for the District of Texas. Therefore, the only remaining issues are whether litigation in Texas would be more convenient for the parties and witnesses, and would also serve the interest of justice.

Considering the *Jones* factors, Defendants have not satisfied their burden of making a strong showing that convenience and justice favor transfer. The majority of the factors equally favor both parties. The first three factors strongly support retaining jurisdiction; the contract's explicit reference to governing Idaho law and the fact that Grafton is domiciled in Idaho. Defendants also provided Graton with company credit and gas cards, a computer, fax machine and copier, phone and fax lines, and business cards to Grafton's home office. *Defendant's Response*, 2-4 (Dkt. 26). Further, the employment contract stated explicitly that Grafton was a "full time employee of Company working from Employee's residence at 8148 N. Marabou, Hayden, Idaho, until such address is changed by company, and in connection thereto to devote Employee's full business time, attention, efforts and energy to the affairs of the company." *Exhibit C to Grafton Affidavit* (Dkt. 28) In essence, Defendants maintained an office in Idaho.

This District is more familiar with the governing Idaho law than the District of Texas. The third factor obviously supports Grafton because he chose Idaho as the forum in which to bring the claim, and there is generally a strong presumption in favor of honoring a plaintiff's choice of forum.

As discussed above, Defendants have contacts with Idaho, but the contacts relating to Grafton's cause of action are in primarily in Texas, so these factors would support transferring jurisdiction. The remaining factors weigh evenly towards both parties. In the Court's well-formed view, Defendants have not met its burden of showing why the final three factors weigh in its favor, i.e., the differences in the costs of litigation in the two forums, the availability of compulsory process to compel attendance of witnesses, and the ease of access to sources of proof.

These factors, when considered together, do not make the requisite "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843. This is especially true considering that Defendants choice to avail themselves to Idaho law in the governing law provision of the contract. The fact that Defendants reside and conduct most of their business in Texas is not a sufficient factor to warrant transfer. In sum, Defendants have failed to adequately show why convenience and the interests of justice favor transfer to Texas. Accordingly, the motion to transfer should be denied.

## RECOMMENDATION

**IT IS RECOMMENDED:**

1) Defendants' *Motion to Dismiss* (Dkt. 22) be **DENIED**.

REPORT AND RECOMMENDATION AND ORDER **- 10 -**

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 626(b)(1) and Dist. Idaho L. Rule 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

## ORDER

**IT IS ORDERED:**

1) Defendants' *Motion to Submit Reply Affidavit* (Dkt. 33) is **DENIED**.

2) Defendants' *Motion for Protective Order* (Dkt. 34) is **MOOT**.

3) Plaintiff's *Motion to Strike* (Dkt. 37) is **GRANTED.**

Dated: **November 22, 2011**

Honorable Larry M. Boyle
United States Magistrate Judge